# The Toledo, Wabash and Western Railway Co.

## *v.*

## John G. Roberts.

1. **Averment** *that defendant is a common carrier.* An averment in a declaration, that the defendant is a corporation, created by the laws of this State, and engaged in operating a railroad, and carrying corn and grain in cars furnished by itself, upon its own and other roads, is equivalent to an averment that it is a common carrier.

2. **Contracts**—*what constitutes a contract by common carrier to carry freight on specific terms.* Where a shipper applies to the local freight agent of a railroad company, to get the rates of freight upon a proposed shipment of a certain amount of grain to a given point, and the agent, acting by authority, gives him the rate, and he agrees to ship at that rate, and then goes to the master of trains of the company, and makes an arrangement with him for the requisite number of cars, per week, for the purpose of making such shipment, this amounts to a special contract on the part of the company to make the shipment at the rates named by the freight agent, and to furnish the cars in the manner agreed upon by the shipper and master of trains.

3. **Same**—*can not change rates of freight so as to affect existing contracts.* Carriers can change their rates of freight so as to operate upon future contracts, but they can not increase them so as to affect existing contracts.

4. **Measure of damages** *for failure to carry freight according to contract.* In a suit against a railroad company for a failure to carry grain according to contract, compensatory damages alone can be given.

Appeal from the Circuit Court of Sangamon county; the Hon. Charles S. Zane, Judge, presiding.

Messrs. Hay, Greene & Littler, for the appellant.

Messrs. Stuart, Edwards & Brown, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action on the case, on promises, brought to the circuit court of Sangamon county, by John G. Roberts, against the Toledo, Wabash and Western Railway Company.

The declaration contains three counts, in all of which a special contract to carry is alleged. In the first, to carry fifty thousand bushels of corn from Springfield to Baltimore, at sixty cents per hundred pounds, and fifty cars per week; in the second, to carry the same quantity of corn, by the same number of cars, for a reasonable reward; in the third, to furnish one hundred and twenty-five cars, at the rate of fifty cars per week, to carry the quantity of corn as in the first and second counts, being fifty thousand bushels, but no rate of compensation alleged.

The plea was non-assumpsit, and there was a trial by jury. The plaintiff, himself, was his only witness, the cause resting on his testimony alone. The witnesses for the defense were, one Hermann, the freight agent at Springfield; one Wade, train-master of the railroad, and Mr. Andrews, the superintendent of the Illinois division of the defendant company's railway, supplemented by telegram of Mr. Carson, the general freight agent at Toledo.

The jury found for the plaintiff, assessing his damages at two thousand six hundred and fifty-three dollars. A motion for a new trial having been entered by the defendants, the plaintiff remitted five hundred and seventy-eight dollars, whereupon the motion for a new trial was overruled, and and judgment rendered for the remainder, being two thou-

sand one hundred and seventy-five dollars. To reverse this judgment this appeal is taken, and the ground principally relied on for reversal is, that the verdict is against the preponderance of the evidence, and in giving plaintiff's instructions.

The first point made by appellants, to which our attention is called, is, that the defendants are not declared against as common carriers, and no charge is made of a failure, by them, to perform any common law or statutory duty—that a special contract is relied on, and nothing else.

Whilst the declaration does not, in so many words, describe the defendants as a common carrier, it is alleged, the defendant at Springfield was a corporation created by a law of this State, and engaged in operating a railroad, and conveying corn and grain, in cars furnished by themselves, upon their own and other roads, to Baltimore, in Maryland, which is equivalent to a specific averment, for by the law of their creation, and by the law of the State, being a railroad corporation, they are a common carrier. Independent of any law, the court would presume it. *Parmelee* v. *McNulty*, 19 Ill. 556. But they are correct in the position that this action is based on a special contract, and if that has not been proved substantially as set out in the declaration, the verdict should have been set aside.

If the plaintiff was worthy of credit, and that we must presume, the special contract was proved substantially as alleged in the first count. But it is claimed, by appellants, that the facts to which he testified do not establish a contract. The contract alleged was, that the corn was to be carried for sixty cents per hundred pounds to Baltimore, on cars to be supplied by the defendants, at the rate of fifty cars per week. The argument is, that when plaintiff went to Hermann to ascertain the rate, he made no contract then, but proceeded to Mr. Wade, the train-master, with whom the agreement was made to furnish the cars at the rate of fifty per week, beginning the following Monday. This was on

the 17th of December. Now, because nothing was said to Wade about the rates, it is insisted no contract was made.

What is wanting to make a complete contract for the transportation of this grain? Hermann was the local freight agent at the time, with instructions from his superiors to make that the rate. He had authority to make the statement he did make. That being satisfactory to the plaintiff, he said he would ship at that rate. He then applied to Mr. Wade, the master of trains, and on his assurance that the requisite number of cars would be supplied, the plaintiff closed up his contracts for corn, purchasing fifty thousand bushels, the amount defendants had agreed to ship. We can not see why this is not a perfect contract. One employee of the company, whose special business it is to know the rate of freights, and who was then acting under the immediate order of his superior, tells the shipper the rate will be sixty cents per hundred pounds. This is conclusive on the company, as to the rate, if the witness is not discredited. The train-master is then applied to, and he engages to furnish the requisite number of cars, as wanted. This is conclusive on this branch of the case, if the witness is believed. Here, then, are all the elements of a valid and binding contract: parties able to contract, a proper subject matter, a valid consideration, and the terms and time of performance.

But it is urged by appellants, that the rate agreed upon, sixty cents per hundred pounds, must not be understood as a continuing rate, but was only applicable to a shipment made at the time the rate was declared. This, as a general proposition, must be correct, for it would be unreasonable to hold a carrier bound, in the performance of his general duties, to a rate once established, and holding it incapable of change. We do not understand that this is claimed. It is claimed, and we think the testimony sustains the claim, that these fifty thousand bushels of corn were to be carried to the Baltimore market for sixty cents per hundred pounds. It was expected, if cars were furnished, it would all go forward by

the middle of February, then approaching. What is there unreasonable in this, in a contract so large as this, even supposing the general rates to have advanced before that time? That a carrier can change his rates so as to operate upon future contracts, will not be questioned, but that he can change them, by increasing them, so as to affect an existing contract, can not be admitted, and in this case it was a fair question for the jury to say what contract was proved. Was it that this quantity of corn should be carried at the rate stated by Hermann and agreed to by plaintiff, or was it to carry at such rates as might be established at the time the transportation was done? They have said the former, and we think justly, for it is not reasonable to suppose a party, dealing on those existing prices at a distant market, would incur the hazard of a loss which might be, and probably would be, the consequence of a rise in freights whilst his contract was being performed. As plaintiff made his contract, he was reasonably certain there could be no loss, but a sure gain. If the contract was as now insisted upon by appellants, plaintiff took all risks.

As to the objection that this, being an action against a common carrier, and not on any common law obligation, the terminal points of the route must be correctly stated, it may be conceded, the declaration is not sufficiently specific in this respect, and might have been obnoxious to demurrer, or advantage taken of it on the trial. After verdict, where the proofs supplied the defect, the objection, being quite technical, can not have weight.

As to the instructions, the one numbered three was objectionable, for if there was no special agreement as to rates, the established rate would govern, but taking all the instructions together, we think the case was fairly put to the jury.

Upon the question of damages, it does not appear the court was asked to give to the jury any rule by which to measure them, and we are at a loss to perceive what rule they did adopt. In cases like this, compensatory damages only can

be given, but what elements seemed to enter into the computation, the jury were not informed. That they allowed more than mere compensation, is fairly inferrible from the *remittitur*. Plaintiff stated his loss to be two thousand one hundred and seventy-five dollars, but explains: "That is what I would have made on the grain," without counting his time lost. There is no proof in the record that plaintiff had bought and paid for any of this corn, except two hundred dollars, on a lot of five thousand bushels, bought of Williams. We are compelled to infer, from the testimony, that on the receipt of advices from Baltimore that sixty cents per bushel would be paid for corn delivered there, plaintiff, when he ascertained the rate for shipping, went, the same day, among the holders of corn, and bargained for the desired quantity, thereby getting the control of 50,000 bushels, but there is no proof he ever shipped any of it, except fifteen car loads, under this contract, by "The Globe Line," and the small lot he sent to Pittsburgh. He furnishes no proof what portion of this 50,000 bushels was delivered to him, and that he was obliged to, and did, store it, or that he incurred any expenses whatever in regard to it, or that he was compelled to sell at home, and did there sell, at a loss, or that he was obliged to pay, and did pay, damages to those with whom he had bargained for corn for failing to take it, if such was the fact. As we have said, we can not perceive on what ground the jury based their estimate of damages—what elements composed it. This being so, the cause must go to another jury, on proper instructions from the court as to the true measure of damages.

For the reasons given, the judgment is reversed, and the cause remanded.

*Judgment reversed.*