Baird Bros., Appellees, v. Minneapolis & St. Louis Railroad Company, Appellant.

**COMMERCE:** . Interstate Commerce—Furnishing Cars on Specified Days Only—Consequent Delay—Reasonableness of Rule—Jurisdiction of State Court. A state court has jurisdiction to entertain an action for damages by reason of delayed transportation in an interstate shipment, even though the carrier pleads that the delay was occasioned by the fact that it had established a rule—though it had not filed the same with the Interstate Commerce Commission—under which it furnished cars for interstate shipments of the kind in question *only on certain specified days of each week*, and that the plaintiff shipper demanded cars on days not provided by said rule. In other words, the state courts have jurisdiction to pass on the unadjudicated reasonableness of such a rule.

The premises leading to this conclusion are: .

(1) The duty to furnish reasonable shipping facilities rests upon an interstate carrier by virtue of '(a) the Interstate Commerce Act, (b) the statute law of this state, and (c) the common law.

(2) The primary authority to determine what does and what does not constitute reasonable shipping facilities is not an expressly conferred power of the Interstate Commerce Commission.

*Appeal from Louisa District Court.*—Oscar Hale, Judge.

DECEMBER 11, 1917. ' ʹ

Action at law brought by plaintiffs, who are stock shippers, for damages for refusal of defendant company to furnish cars to ship stock from the town of Marsh, Iowa, to Chicago. Plaintiffs allege they were compelled to keep the cattle in the stockyards of defendant for some time at expense, to their damage in the sum of $200. The case was tried to the court without a jury, upon an agreed statement of facts. The court found for plaintiff, and rendered judg- .

ment against defendant for the sum of $200.   The defendant appeals.—*Affirmed.*

*Burrell & Devitt* and *Arthur Springer,* for appellant.

*Fred Courts* and *F. M. Molsberry,* for appellees.

PRESTON, J.—The petition alleges, in substance, that plaintiffs are stock shippers, and that on Monday, June 10, 1912, they gave notice to the agent of defendant at Marsh, Iowa, and ordered two cars to be furnished to the plaintiffs at defendant's station at Marsh, Iowa, for Wednesday, June 12, 1912, for the shipment of 52 head of cattle; that plaintiffs had no notice from defendant or its agent that said cars would not be furnished at said time, or that the said cattle would not be taken by defendant for shipment on that day; that, at about 8 or 9 o'clock in the morning of June 12, plaintiffs delivered to the defendant at Marsh station the 52 head of cattle for shipment on their train No. 90, due at said station at about 10 o'clock that morning; that defendant refused to ship said cattle upon that train, or upon any other train that day; that plaintiffs were compelled to keep said cattle in the stockyards of defendant, and a part of them were not loaded until the next day, and the balance not until the Sunday following; by reason of which plaintiffs were damaged, etc.   For answer, defendant admitted its corporate capacity, and that it was operating a line of railroad through Louisa County and other states; denied all other allegations of the petition; and set up affirmative defenses as follows:

"The defendant, further answering, states that it operates a regular stock train from Marsh, Iowa, to Monmouth in the state of Illinois, connecting with the Chicago, Burlington & Quincy Railroad Co., a corporation operating a line of railroad between said Monmouth and the city of Chicago, in the state of Illinois.   That this plaintiff well knew that this defendant operated such train and had set

apart Sunday and Tuesday of each week for the purpose of the shipment of live stock over its lines and its connecting lines to stations in other states, and that, notwithstanding such knowledge, and notwithstanding it was necessary that this defendant, in the ordinary course of its business and for the better conduct thereof, established such rule for the speedy delivery of interstate shipments of live stock, demanded of this defendant that it furnish such trains on other days than those above designated, and that if this defendant failed and neglected or refused to furnish such cars, as plaintiff alleges in its petition, that it was because said stock was not delivered to it on the regular days as above specified. Further answering, defendant states that the shipment contemplated by the plaintiff herein and the defendant herein, and for which it seeks to recover damages against the said defendant, was an interstate shipment, being a shipment from the town of Marsh, in the state of Iowa, to the city of Chicago, in the state of Illinois, and that the Federal statutes in such cases made and provided have assumed the jurisdiction of all questions arising out of the interstate shipments, whether before the Interstate Commerce Commission or Court, under the Federal statute or in the district and circuit courts, of said Federal statute, and that by reason of such Federal legislation upon the interstate traffic, it has vested its exclusive jurisdiction of determining the rights of all parties engaged in such shipments, either as shippers or as public carrier, and that by reason thereof this court is without jurisdiction to hear and determine any of the matters alleged and charged against the defendant by the plaintiff, and for which it seeks to recover damages in this action.  *  *  *  Further answering, the defendant states that, at, during and prior to the time that plaintiff in Count 1 of his petition complains of the failure of this defendant to furnish cars, there had been established by the defendant company the rule that

stock shipments on the eastern division of the defendant
railroad company, running from the city of Oskaloosa, in
the state of Iowa, to the city of Monmouth, in the state of
Illinois, should be received for shipment for said company
and cars furnished for said shipment only on Sunday and
Tuesday of each week. That with this rule the plaintiff
was, during all the time herein referred to, familiar. That
the said rule applied not only to this plaintiff, but to each
and all of the shippers of stock along the eastern division
of said defendant company, and was enforced alike as to
each and all of them. That this plaintiff was not entitled
to receive any better or different treatment in the delivery
of cars than was any other shipper along said division of
said defendant railroad company. That said rule was in
force and affected interstate shipments on said division of
the defendant company's lines, and that while said rule
was in force it would have been unlawful for either the
plaintiff or defendant or both of them, if said defendant com-
pany had furnished cars or accepted shipments of stock
from this plaintiff under any other or different rule than
said stock shipments were received or cars furnished to any
other shippers along said line. The defendant for further
answer states:   That if the plaintiff deemed said rule of
the defendant company unjust or unfair, that, under the
statutes of the United States known as the Interstate Com-
merce Act and the amendments thereto, it was the duty of
said plaintiff, and his only remedy under the terms of said
act was an application to the Interstate Commerce Commis-
sion to pass on and determine the reasonableness of said act,
or in an appeal; and after an appeal to said Commission,
and the finding that the said rule was unjust and unfair,
to appeal to the district or circuit court of the United
States, if he had been damaged thereby. The defendant
for further answer states: That this court is without juris-
diction to determine the reasonableness or justness of the

said rule, and has no jurisdiction to entertain an action for damages for a failure to furnish cars as provided by said act for interstate shipment; that by said acts of Congress, the exclusive jurisdiction to determine the rights of the plaintiff and other shippers along the line of the defendant company's railroad is exclusively vested in the Interstate Commerce Commission or in the courts of the United States. Wherefore, the defendant asks that plaintiff's petition be dismissed for lack of jurisdiction. Defendant hereby tenders to plaintiff the sum of $20 in payment of the cause of action set forth in Count 4 of plaintiff's petition. Wherefore, defendant asks judgment against the plaintiff for costs."

To the affirmative defenses so pleaded by defendant, plaintiff demurred on the following grounds:

"That the facts stated constituted no defense to the plaintiff's cause of action.

"For the further reason that it is not alleged in said answer that the rule pleaded has been determined to be a reasonable rule by the Interstate Commerce Commission or any court of the United States or state court.

"For the further reason that that part of said answer and the amendment thereto does not state or show in any manner that the district court of the United States has exclusive jurisdiction, or does not plead any statute or any rule or regulation of the Interstate Commerce Commission which would in any manner conflict with the jurisdiction of this court or would be a defense to plaintiff's cause of action.

"For the further reason that the questions raised in said answer and amendment cannot be presented and raised in the manner attempted to be raised thereby. That the only remedy of the defendant herein is by filing a petition for removal, as provided by the United States statutes, and having failed to so do, the defendants have waived all their .

right to removal and all objections to the jurisdiction of this court.

"Plaintiffs further demur to said portion of Count 1 of the answer and amendment thereto, for the reason that the matters therein set forth raise the question of what is and what is not a reasonable regulation by the railroad company, and this is not a question relied upon or pleaded by the plaintiff, and is not in any manner at issue in this case."

The demurrer was sustained, and exceptions taken by the defendant. Notwithstanding the demurrer and the ruling thereon, thereafter the parties agreed to submit the case on an agreed statement of fact, which is as follows:

"It is agreed that this case shall be submitted to the court for final determination upon this agreed statement of facts, which, with the pleadings, shall constitute the issues upon which a determination of the court shall be made:

"That on Monday, June 10, 1912, the plaintiff requested the defendant to furnish the plaintiff, at the defendant's station at Marsh, Iowa, two cars, for the shipment of 52 head of cattle to be shipped from Marsh, Iowa, Wednesday, the 12th day of June, 1912. That defendant refused to furnish said cars, for the reason that the said company had established and published a rule that cars for live stock shipment from points on its line to Chicago, Illinois, should be furnished to shippers on Sundays and Tuesdays, and not on any other day of the week. Said rule was in full force and effect, and as to all of the shippers of live stock along the line of defendant railroad. The plaintiff insisted on his right to have said cars at said station of Marsh, Iowa, on Wednesday, and that by reason of said refusal of the defendant to furnish the plaintiff cars on Wednesday at his demand, the plaintiff was damaged in the sum of $200 by delay in shipment, shrinkage and difference in the market price of stock, etc. The plaintiff claims that he did not know that said rule was in force. It is conceded that the

plaintiff has at no time made complaint to the Interstate
Commerce Commission, under the provisions of the Federal law known as the Interstate Commerce Act; that said
rule or regulation of the defendant company in the relation
to the distribution of cars for live stock shipment to Chicago, Illinois, was unreasonable, and said rule has never
been held unreasonable by the Interstate Commerce Commission.  It is insisted by the defendant that, by reason
of the foregoing facts, the court is without jurisdiction to
determine this controversy, but it is agreed that, if the
court has jurisdiction under the foregoing statement of
facts to determine the controversy, that plaintiff's damage
by reason of the failure to furnish the cars on Wednesday,
as demanded by the plaintiff, is $200."

No other evidence was offered or considered by the
court, and the bill of exceptions recites that the cause was
determined upon the pleadings and the agreed statement
of facts.  The errors assigned are:

"1.  The court erred in holding that the court had jurisdiction to award damages in this case under the agreed
statement of facts.

"2.  The court erred in awarding the plaintiff damages by reason of defendant's refusal to furnish the plaintiff
a stock shipper's car at a time when it was refused to furnish cars to all shippers on its line for similar shipments;
that in holding that the plaintiff could recover damages the
court permitted a discrimination in plaintiff's favor as
against all other shippers engaged in competitive shipping
with the plaintiff along the line of its said road.

"3.  The court erred in holding that, where a rule was
regularly established, published and in force by the railroad
company, by the terms of which cars were to be furnished
for shipments off its line on certain days of the week, that
the plaintiff, without an appeal to the Interstate Commerce
Commission and a holding by said Interstate Commerce

Commission that said rule in relation to furnishing cars was unreasonable, could recover against the defendant in an action at law for damages.

"4.  The court was without jurisdiction to determine the reasonableness or unreasonableness of the rule of the defendant company in relation to the distribution of its cars, and that, until the rule established by the company had been declared unreasonable by the Interstate Commerce Commission, no court, either state or Federal, had jurisdiction to award the plaintiff damages as against the defendant for the reason that the rule was unreasonable.  That fact could be determined only by the Interstate Commerce Commission, who, by the acts of Congress, are given authority to determine the reasonableness of rules established by the railroad companies as to the distribution of cars engaged in interstate commerce."

Though four errors are assigned, we think there is but one question in the case, and that is whether the court had jurisdiction to hear and determine the controversy, or whether plaintiff must present the matter to the Interstate Commerce Commission, as contended by appellant.  It is thought by appellant that the trial court, in rendering judgment for plaintiff, necessarily determined that the rule of defendant relied upon was unreasonable.  In its reply argument, appellant states the defendant's reason for making the rule, which, if it was in evidence, might be a basis for determining whether the rule is or is not reasonable.  But this does not appear in the record, and in fact there is nothing in the record from which the court could determine, as a question of fact, whether the rule is a reasonable one or not.  Again, it is thought by appellant that, if it is compelled to receive shipment from plaintiff on a day other than the two fixed in the rule, there would be a discrimination by it between plaintiff and defendant's other customers, because under the rule it could only receive shipments from

such other customers on the two days fixed in the rule.
It is a sufficient answer to this, we think, to say that if,
under the law and a like state of facts, defendant is com-
pelled to receive shipments from plaintiff on other days,
other customers or shippers would have the same right, and
thus there could be no discrimination.

It is argued by appellant at one point that the question
presented is whether a state court may affirmatively hold
that a rule in relation to furnishing cars, regularly adopted
and filed, and which is in full force, may be by a court held
unreasonable, etc. The thought seems to be that this rule
has been published and filed with the Interstate Commerce
Commission and approved by the Commission; but we do not
interpret the agreed statements of facts to so say, nor did
the defendant plead that such was the fact. We take it
from the agreed statement of facts that the .company had
merely promulgated such rule, and in some way published
it. But plaintiffs claim they had no knowledge thereof.
Doubtless plaintiff would be compelled to take notice there-
of, had it been lawfully filed and published as required. We
apprehend that there may be some rules of the company
for the government of its employees in regard to operation
of its trains, signals, and the like, which it is not required
to file with the Interstate Commerce Commission. Doubt-
less it would have been proper to have filed the rule in
question with the Commission, but, under the record, it is
not shown that it was filed there. It may be that it should
be presumed that the rule had been filed with the Commis-
sion had it been one of the things required by the law to be
filed, such as rates, and the like. But this question has not
been argued. Furthermore, the agreed statement of facts
itself provides that, if the court had jurisdiction, judgment
may be entered for $200; so that, as stated, there is but one
question in the case.

Our statute provides that every railway corporation

shall, upon reasonable notice and within a reasonable time, furnish suitable cars to any and all persons who may apply therefor, for the transportation of any and all kinds of freight, and receive and transport such freight with all reasonable dispatch. Code Supplement, 1913, Section 2116. This was also the common-law rule. The Interstate Commerce Act itself so provides. 10 C. J. 72, 73; *Chicago, R. 1. & P. R. Co. v. Hardwick F. E. Co.,* 226 U. S. 426 (57 L. Ed. 284, 46 L. R. A. [N. S.] 203) ; *Menasha Paper Co. v. Chicago & N. W. R. Co.,* 241 U. S. 55; *Illinois Cent. R. Co. v. River & Rail Coal Co.,* 150 Ky. 489 (150 S. W. 641, 44 L. R. A. [N. S.] 643).

In case of conflict between a state statute and the Federal statute, the latter would control. Nevertheless, by the Federal act it is made the duty of the railway company to furnish cars. That is all we determine; and, as it bears on the question of the jurisdiction of the court to award damages for a failure to so furnish cars, there is no question raised as to any conflict between state and Federal statute at this point. We have, then, the question presented whether, notwithstanding this duty, a railway company may, without any reason, so far as appears in this record, arbitrarily make a rule, not shown to have been filed with the Commission, by which it will receive freight or live stock only upon two certain days in a week. No claim is made that this is not an interstate transaction. The sections of the Interstate Commerce Act referred to in argument are Sections 1, 3, 6, 15, and 22. Section 15, the one relied upon by appellant, is in part as follows:

"The Commission is hereby authorized and empowered to determine and prescribe what will be the just and reasonable individual or joint rate or rates, charge or charges, to be thereafter observed in such case as the maximum to be charged, and what individual or joint classification, regulation, or practice is just, fair, and reasonable, to be thereafter

followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds the same to exist, and shall not thereafter publish, demand, or collect any rate or charge for such transportation or transmission in excess of the maximum rate or charge so prescribed, and shall adopt the classification and shall conform to and observe the regulation or practice so prescribed. * * * Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, or charge, or any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate, fare, or charge, the Commission shall have, and it is hereby given, authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, fare, charge, classification, regulation, or practice; and pending such hearing and the decision thereon the Commission upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension may suspend the operation of such schedule and defer the use of such rate, fare, charge, classification, regulation, or practice, but not for a longer period than 120 days beyond the time when such rate, fare, charge, classification, regulation, or practice would otherwise go into effect;" etc.

· Appellant's first point, and the citations in support thereof, follow: Under the Interstate Commerce Act, and the amendments thereto, the shipper engaged in interstate commerce who complains of the unreasonableness of any rate, rule or regulation adopted and put in force by a railroad company engaged in interstate commerce must appeal to the Interstate Commerce Commission to determine wheth-

er the "rate, rule or regulation" is unreasonable, this being one of the administrative duties of the Interstate Commerce Commission under the act of Congress. *Texas & P. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426 (51 L. Ed. 553); *Southern R. Co. v. Reid,* 222 U. S. 424 (56 L. Ed. 257); *Northern Pac. R. Co. v. Washington,* 222 U. S. 370 (56 L. Ed. 237); *Baltimore & O. R. Co. v. Pitcairn Coal Co.,* 215 U. S. 481 (54 L. Ed. 292); *Morrisdale Coal Co. v. Pennsylvania R. Co.,* 183 Fed. 929 (same case affirmed, 230 U. S. 304, 57 L. Ed. 1494); *Texas & P. R. Co. v. American Tie & Timber Co.,* 234 U. S. 138 (58 L. Ed. 1255).

The second proposition is: The question as to the reasonableness of a rule of car distribution is administrative in its character, and calls for the exercise of the powers and duties conferred by Congress upon the Interstate Commerce Commission (citing *Morrisdale Coal Co. v. Pennsylvania R. Co.,* 230 U. S. 304 [57 L. Ed. 1494]; *Baltimore & O. R. Co. v. Pitcairn Coal Co.,* 215 U. S. 481; *Interstate Commerce Commission v Illinois Cent. R. Co.,* 215 U. S. 452 [54 L. Ed. 280]; *Loomis v. Lehigh Valley R. Co.,* 208 N. Y. 312 [101 N. E. 907]).

The third: The distribution of cars is within the control of the Interstate Commerce Commission, and the courts cannot award damages for failure or refusal to issue cars on a specific day. *Vulcan Coal & Min. Co. v. Illinois Cent. R. Co.,* 33 Interst. Commerce Commission Rep. 52; *Western & A. R. Co. v. White Provision Co.,* (Ga.) 82 S. E. 644.

And the fourth point: For the preservation of the uniformity which it was the purpose of the act to secure in the regulation of interstate commerce, the courts may not, as an original question, exert authority over subjects which primarily come within the jurisdiction of the Interstate Commerce Commission (citing *Texas & Pac. R. Co. v. American T. & T. Co.,* 234 U. S. 138 [58 L. Ed. 1255]; *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.,* 204 U. S. ·426 [51

L. Ed. 553]; *Baltimore & O. R. Co. v. Pitcairn Coal Co.*, 215 U. S. 481 [54 L. Ed. 292]; *Robinson v. Baltimore & O. R. Co.*, 222 U. S. 506 [56 L. Ed. 288]; *Mitchell Coal & Coke Co. v. Pennsylvania R. Co.*, 230 U. S. 247 [57 L. Ed. 1472]; *Morrisdale Coal Co. v. Pennsylvania R. Co.* 230 U. S. 304 [57 L. Ed. 1494]; *Loomis v. Lehigh Valley R. Co.*, 208 N. Y. 312 [101 N. E. 907]).

It seems to us that some of these propositions are not in this case, and we shall not attempt to refer to all of defendant's authorities.

Under Section 1 of the Interstate Commerce Act as amended, it is provided that it is the duty of a common carrier to provide reasonable facilities and make reasonable rules and regulations with respect to transportation; but appellant has not pointed out, and we do not find anywhere in the act, that it is the duty of the Commission to prescribe what are and what are not reasonable facilities, such as those in question in this case; and where rule has not been filed, and where that, or any other obligation, is not expressly conferred upon the Commission, it is not necessary that it should first pass upon and decide the question as to whether a particular regulation is or is not reasonable. As before stated, it is the duty of a railroad company to receive freight offered, and to provide reasonable facilities and prompt transportation, and this duty could be required before the Interstate Commerce Act was passed. The authorities seem to hold that exclusive jurisdiction to pass upon the question of reasonable facilities was not conferred upon the Commerce Commission by this act; therefore we think it was not necessary to apply to the Commission before the injured party has a right to resort to the courts to recover damages such as are here claimed. This we understand to be the rule in *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*, supra. That was a case involving the question of rates, and the question being considered was

one covered by the Interstate Commerce Act.   By virtue of
Section 6, this requires the rate fixed by the company to
be filed with the Commission, and this is presumed a reason-
able rate until it is otherwise declared by the Commission.
In the opinion, the court referred to Section 22 of the act,
which provides that nothing therein shall abridge or alter
common-law or statutory remedies, but that it is to be
supplemental and additional thereto.   In that case, the
plaintiff was required to first apply to the Commission, the
court holding that a common-law remedy could be followed
and the Commission disregarded when such remedy would
not interfere with the administration of the law under the
Interstate Commerce Act.  In that case, the rates fixed by the
railroad company and filed with the Commission were by the
act of filing made reasonable until the Commission had
otherwise decided.   The instant case differs from that.
There is nothing in the act the enforcement of which would
interfere with or abridge the rights of the shipper in de-
manding his right to reasonable shipping facilities, such
as are in controversy here, and to recover damages.  A ship-
per's demanding of the defendant reasonable shipping facil-
ities does not abridge or interfere with, nor is it inconsist-
ent with, the provisions of the Commerce Act.  It seems to
have been the purpose of the Interstate Commerce Act to
save common-law and statutory remedies so far as possible,
and furnish additional relief in certain cases, and that a
specific remedy given by the act should be regarded as
cumulative, where other appropriate common-law or statu-
tory remedies existed for the redress of the particular griev-
ance or wrong dealt with in the act, unless it be inconsist-
ent with the act itself.   In the case of *Texas & Pac. R. Co.
v. American T. & T. Co.*, supra, it was held that damages
resulting from the refusal of the railway company to ac-
cept crossties could not be recovered, in the absence of
previous action of the Interstate Commerce Commission,

where the refusal was based upon the want of any filed and published rate. This was a case involving the question of schedule rates filed with the Commission, which was to determine, primarily, whether the rates filed applied to that particular shipment. The question as to the duty to furnish adequate facilities was not under consideration in that case, but the question was in regard to rate regulation, powers, and the duties of the Commission. *Southern R. Co. v. Reid* was another rate case holding that the provisions of the Interstate Commerce Act invalidated the provisions of a state statute, in so far as they penalized the refusal of a carrier to receive a tender of freight for transportation to a point on the line of another carrier outside the state, where no rate for such shipment has been established, filed or published, and we think it is not in conflict with the holding in the *Abilene* case.

Counsel for appellant argue the instant case as though there was some interference with the rate-regulating power of the Interstate Commerce Commission, in order to bring it within the rule of the cases before referred to. Under the record in this case, the exercise of power by the trial court in determining this case did not interfere with the rate regulation or the authority of Congress or the Commission to prohibit discrimination. It is simply a question of a delayed shipment and damages resulting therefrom by reason of the defendant's failure to perform its duty in receiving the cattle. The effect of holding according to defendant's contention would be that, before a shipper could recover damages for a delayed interstate shipment, he must appeal to the Interstate Commerce Commission or to the Federal courts. It cannot be claimed from this record that the Commission had exercised jurisdiction by granting defendant the right to operate trains only on Sundays and Tuesdays. The *Pitcairn* case, supra, and perhaps some of the other cases cited, related to the practice of the distribution

of cars in case of car shortage, and involved the question of the power of the Commission over the distribution of cars, and held that .the courts could not, by mandamus, compel the Commission to make a rule, nor by injunction restrain the enforcement of one that it had promulgated in regard to the distribution of cars. We assume that the abuse, or at least one of the abuses, sought to be corrected, was that in such a case a railroad company could not favor one shipper by furnishing more than his proportion of cars, and discriminate against another shipper by giving less than his proportion. The *Pitcairn* case was brought under Section 3 of the Commerce Act, which forbids preferences in furnishing equipment to one and not furnishing the same to another. There is a clear distinction between reasonable facilities such as claimed by plaintiff in the instant case, under the circumstances shown, and a preference extended by furnishing a particular kind or amount of facilities to one shipper and withholding the same kind or amount from another. The case of *Interstate Commerce Commission v. Illinois Cent. R. Co.*, supra, interprets the provision of the Interstate Commerce Act which authorizes the Commission to regulate interstate traffic to prevent preferences. In *Loomis v. Lehigh Valley*, supra, the railway had, prior to a certain date, furnished to the plaintiff, a shipper of produce, cars fitted with grain doors or bulkheads for shipment of produce in bulk, but thereafter refused to furnish cars so fitted. It was claimed by defendant that it was under no common-law duty to furnish plaintiff with cars so equipped, and further that, pursuant to the Interstate Commerce Act and the Public Service Commission Act of the state of New York, defendant had filed tariffs of rates which contained no provision for payments or allowances to shippers for grain doors or bulkheads placed in cars by them. Under such circumstances, it was held that plaintiff could recover the expenses for lumber furnished by him to equip the cars

with grain doors or bulkheads on intrastate shipments, but not so as to interstate shipments. *Robinson v. Baltimore & O. R. Co.,* supra, holds that the Commission must first be resorted to before a shipper can maintain an action for discrimination when the rate has been published under interstate commerce rules; and to the effect that the shipper must first complain to the Commission before he can get relief when the question of rate regulation is involved is held in *Mitchell Coal & Coke Co. v. Pennsylvania R. Co.,* 230 U. S. 247 (57 L. Ed. 1472), where it is further held that it is not necessary to first bring an action before the Commission where a shipper seeks to recover from a competitor a rebate illegally collected, for the reason that rebates are forbidden, and there is no occasion for administrative action on the part of the Commission.

On the other hand, cases are cited by appellee sustaining the action of the trial court in its holding that it had jurisdiction to determine this controversy. In the case of *Bradbury v. Chicago, R. I. & P. R. Co.,* 149 Iowa 51, it is said, on page 56:

"For the purposes of this case, it may be conceded that the facts bring it within the terms of the Federal statute, and that plaintiff must recover thereon, if at all. The petition stated a cause of action thereunder, and, unless it can be said that Federal courts have exclusive jurisdiction in the enforcement of rights created or declared in advancement of those previously existing, there is no ground for interfering with the judgment entered. The matter of jurisdiction is not touched in the act of Congress, and it is now well settled that state courts may exercise concurrent jurisdiction with the Federal courts in all cases arising under the Constitution, laws and treaties of the United States, unless exclusive jurisdiction has been conferred, expressly or by necessary implication, on the Federal courts."

To the same effect, see *M'Coullough v. Chicago, R. I. & P. R. Co.*, 160 Iowa 524; also *Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1 (38 L. R. A. [N. S.] 44). See also, as having a bearing, *Elliott v. Chicago, M. & St. P. R. Co.*, (S. D.) 150 N. W. 777.

The case of *Bichlmeier v. Minneapolis, St. P. & S. S. M. R. Co.*, (Wis.) 150 N. W. 508, was an action for damages for negligence in an interstate shipment, and it was there held that an action against a terminal interstate carrier for loss of freight occurring on this line may be brought in a state court. It is further said in said case, on page 509:

"The case of *Siggins v. Chicago & N. W. R. Co.*, 153 Wis. 122, was an action to recover a freight overcharge on an interstate shipment. A violation of the Interstate Commerce Act was therefore involved, and, by force of Section 9 of the act, the action could be brought only in a Federal court. This is not such an action. It is one to enforce a common-law liability of a common carrier for which the Carmack amendment gives a remedy concurrent with Federal remedies theretofore existing, and of which state courts have jurisdiction."

A suit to compel an interstate carrier to receive property for transportation from one state to another is within the jurisdiction of the courts, and not of the Interstate Commerce Commission. *Louisville & N. R. Co. v. Cook Brewing Co.*, 96 C. C. A. 322 (40 L. R. A. [N. S.] 798).

The state courts have concurrent jurisdiction with the Federal courts of causes of action for injuries to interstate shipments of live stock, though such shipments are governed exclusively by the Federal law. *Jackson v. Chicago & N. W. R. Co.*, (S. D.) 147 N. W. 732.

Prior to the enactment of the Interstate Commerce Act, it was recognized by the United States Supreme Court that railroads must carry when called upon to do so, and could

make only a reasonable charge. *Munn v. Illinois,* 94 U. S. 113 (24 L. Ed. 77) ; *Chicago, B. & Q. R. Co. v. Iowa,* 94 U. S. 155 (24 L. Ed. 94).

In suits brought for the enforcement of rights concerning interstate commerce, but not for the specific enforcement of the provisions of the Interstate Commerce Act, state courts have concurrent jurisdiction with Federal courts. Judson on Interstate Commerce, Section 47.

It has been held that a failure to transmit a telegram promptly, as prescribed by the statute or the common law in force in the state, will subject the telegraph company to the state court's jurisdiction for damages, and that this is not in conflict with the Interstate Commerce Act. *Western Union Tel. Co. v. James,* 162 U. S. 650 (40 L. Ed. 1105) ; *Western Union Tel. Co. v. Commercial Milling Co.,* 218 U. S. 406 (54 L. Ed. 1088).

Wherever there is no call for the rate-regulating discretion of the Commission to be exercised, or the question of discrimination between shippers is not involved, or there is no other provision which expressly prohibits state courts from exercising jurisdiction, the state courts have concurrent jurisdiction. *Banner v. Wabash R. Co.,* 131 Iowa 405; *Coad v. Chicago, St. P., M. & O. R. Co.,* 171 Iowa 747, citing *Pennsylvania R. Co. v. Puritan Coal Co.,* 237 U. S. 121 (59 L. Ed. 867) ; *Illinois Cent. R. Co. v. Mulberry Hill Coal Co.,* 238 U. S. 275 (59 L. Ed. 1306).

The holdings are that:

"The neglect or refusal of the carrier to receive and transport freight tendered to it by a shipper is a private wrong for which he is entitled to recover, in an action at law, such damages as he has sustained." 10 C. J. 70.

"Suits against a carrier for damages arising in interstate commerce for failure to furnish cars may be prosecuted either in the state or the Federal courts, and it makes no

difference whether the action is treated as a suit for a breach of the carrier's common-law duty to furnish cars or an action for damages for the carrier's unjust discrimination in the allotment of cars." 10 C. J. 76; *Pennsylvania R. Co. v. Puritan Coal Co.*, 237 U. S. 121 (59 L. Ed. 867).

Section 8 of the original Interstate Commerce Act provides that, in case any common carrier subject to the provisions of the act shall omit to do anything required by the act, it shall be liable to persons injured thereby for the full amount of damages sustained for any violation of the provisions of the act. This section may have been superseded to some extent by amendments to the act, but not to the extent of depriving state courts of jurisdiction in cases like the present.

"A cause of action for damages does not necessarily arise from those acts or omissions of a common carrier that may subject it to a criminal prosecution by the government, or to corrective or coercive proceedings at the instance of the Interstate Commerce Commission, but arises from those acts or omissions which inflict some specific pecuniary injury capable of being established. And these being acts prohibited by express declaration of law, it is not necessary to have any preliminary decision to that effect by the Commission, or any reparation order, but the courts may, as in any other case, apply the law to the facts proven, and award damages to the person injured, and their jurisdiction to that end is not open to question." Fuller on Interstate Commerce, 307-312.

In *Pennsylvania R. Co. v. International Coal Co.*, 230 U. S. 184 (57 L. Ed. 1446), the court said:

"The rebate being unlawful, it was a matter where the court, without administrative ruling or reparation order, could apply the fixed law to the established fact that the carrier had charged all shippers the published or tariff rate and refunded a part to a particular class."

See also *Mitchell Coal Co. v. Pennsylvania R. Co.*, 230
U. S. 247 (57 L. Ed. 1472) ; *Morrisdale Coal Co. v. Pennsylvania R. Co.*, 230 U. S. 304 (57 L. Ed. 1494).

Without prolonging the opinion, it is our conclusion
that the trial court had jurisdiction, and rightly so held.
The judgment is therefore—*Affirmed*.

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.