J. E. VANDER ZYL, Appellee, v. CHICAGO, ROCK ISLAND & PA-
CIFIC RAILWAY COMPANY, Appellant.

CARRIERS: Carriage of Goods—Agreement to Furnish Cars. A
common carrier may validly contract to furnish a shipper with a
specified number of cars at a specified time and place. Such con-
tract does not involve an unjust discrimination, within the meaning
of the Federal act relative to interstate commerce.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY,
Judge.

SEPTEMBER 26, 1922.

REHEARING DENIED APRIL 6, 1923.

ACTION at law, to recover damages for alleged violation of
a contract for shipment of freight. Trial to a jury. Verdict
and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Devitt & Eichhorn, J. G. Gamble,* and *A. B. Howland,* for
appellant.

*McCoy & McCoy* and *C. Ver Ploeg,* for appellee.

WEAVER, J.—The defendant is a common carrier, operating
a line of railway between the town of Leighton in Iowa and the
city of Chicago in the state of Illinois. Plaintiff is a buyer and
shipper of live stock, doing business at Leighton. The plain-
tiff's petition alleges that, on December 8, 1917, he entered into
a verbal contract with the defendant, acting by its station agent
at Leighton, whereby defendant agreed to furnish at said sta-
tion for plaintiff's use three stock cars on December 10, 1917,
and one other stock car on December 12, 1917, for the shipment
of hogs to Chicago, said cars to be delivered at Leighton on

said dates, to be there loaded and transported thence with reasonable dispatch to Chicago on defendant's regularly scheduled trains of said dates. It is further alleged that, in reliance upon such agreement, plaintiff delivered the hogs at the defendant's yards in Leighton on the dates named therefor, but defendant neglected and failed to furnish the cars, as promised, until the 17th and 18th days of said month, to plaintiff's damage and expense for care and feed for said animals, and for loss in their market value, for all of which he demands a recovery of $1,123.08.

By way of answer, defendant denies the allegations of the petition, and for further defense alleges that, at the time referred to, there was an "unprecedented shortage of live-stock cars in the whole central region of the United States, and at all times alleged in the petition, the unfilled orders for stock cars over defendant's lines were far in excess of the number of cars available for loading, such shortage being caused by the fact that a large number of live-stock cars had been diverted from the central western territory by order of the car service commission at Washington, D. C., to aid in the carrying of war supplies, and that to have furnished cars to plaintiff would have constituted an unfair and unjust discrimination in favor of plaintiff and against other shippers, in violation of the act of Congress regulating interstate commerce." The affirmative allegations of the answer were denied by the plaintiff.

The evidence on the part of plaintiff tended to show that, on Saturday, December 8, 1917, he applied to the defendant, through its station agent, for three cars, to be supplied at that station on the following Monday, and one other car on the following Wednesday, the same to be loaded with hogs and sent forward to Chicago on defendant's regularly scheduled trains. The agent at first expressed a doubt whether such an order could be filled, but said he would call up the proper officer of the company and find out. He then turned to his telegraph instrument, and after an apparent conversation over the wire, he reported to plaintiff that he could have the cars, as requested. Acting upon faith of this agreement, plaintiff delivered the hogs at the defendant's yards in time to make the proposed shipment, but defendant did not supply the cars until after a delay

of seven or eight days. Plaintiff also offered proof tending to show the loss and expense incurred by him in keeping the hogs during the delay, as well as in the fluctuations of the market to which they were shipped.

The station agent, as a witness, denied that he agreed or promised plaintiff the cars wanted by him for any certain date, but stated that, on the contrary, he told him that it was uncertain when the cars would be available, but that he would get them as soon as they could be secured. The only other testimony offered for the defense was that of two officers of the company, having charge of the distribution of cars over the defendant's railway system, who testified that, at and about the time in question, there was a shortage in the supply of stock cars rendering it impracticable, if not impossible, to fill all demands or requests of shippers for such transportation. It was also stipulated by the parties to the effect that, upon the December, 1917, dates in question, the unfilled orders for stock cars upon this particular division of the railway exceeded the number of empty cars thereon which were available to supply the demand.

When the parties had rested, defendant moved for a directed verdict in its favor, on the ground that the contract or agreement on which plaintiff demands a recovery is illegal and void, and because it provides for an unfair discrimination in plaintiff's favor, in violation of the Federal statutes. The motion being overruled, the issues were submitted to the jury, which found for the plaintiff. Thereafter, defendant presented a motion for new trial. The motion was denied, and judgment was entered on the verdict.

Excepting the assignment that the verdict of the jury is not supported by the evidence, the several grounds of the motion are entirely too general to present any question for our review. The argument in this court is confined to the single proposition that the contract sued upon is void, as providing for an unlawful discrimination in favor of plaintiff. Stated in counsel's own language, the basic proposition of the defense is that:

"Any contract by which a carrier binds itself to furnish cars at a given time is void; that it is void without regard to whether the demand be reasonable or otherwise; or the time for

which delivery is fixed be a reasonable time after the order is given.''

Again, they say:

''And so it is our contention that, without regard to any existing shortage of cars, a contract for furnishing cars at a specific time is a nullity. Inasmuch as the sole basis for recovery in this case was a special contract, there was nothing which the court could submit to the determination of a jury, and no legal basis for any judgment whatsoever against the appellant. By express admission of counsel for the appellee it was determined that the sole basis of the. appellee's claim was the existence of a contract.'' ·

The discovery of this rule or principle is important, if true; but we must be pardoned if we doubt its soundness. The law does not forbid all contracts between shippers and carriers. The Federal statute *does* forbid all contracts and agreements by which ''undue or. unreasonable preference or advantage'' is given to any particular person or party. See Volume 4, Federal Statutes (2d Ed.) 379; and a somewhat similar prohibition is found in the Iowa Code Supplement, 1913, Section 2125. Subject to these restrictions, intended to prevent unreasonable or undue discrimination against or unjust preference for any particular shipper or class of shippers over another, there is no rule of statute or common law which forbids binding contracts or agreements between carriers and shippers. To affirm such sweeping and universal prohibition as counsel contend for would be to involve the business of railway transportation in confusion and uncertainty beyond description. This situation has not escaped the attention of our courts of last resort. In the case of *Interstate Commerce Com. v. Baltimore & O. R. Co.*, 43 Fed. 37, the court, considering an alleged discrimination as a violation of the statute, says:

''Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, * * * or subject to undue preference or disadvantage persons or traffic similarly circumstanced, *the act to regulate commerce leaves common carriers as they were at common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and appor-*

*tion their rates so as to meet the necessities of commerce,* and generally to manage their important interests upon the same principles which are recognized as sound, and adopted in other trades and pursuits.''

That this liberty of contract, extending to agreements by which the carrier undertakes to furnish cars for the transportation of freight over its line at a stated time in the future, on the terms and conditions and at the rates which are open alike to all other shippers ''similarly circumstanced,'' is not a discrimination or preference, within the meaning of the law, is well settled. For example, see *Eastern R. Co. v. Littlefield*, 237 U. S. 140 (59 L. Ed. 878). The cited case decided by the court of last resort upon the construction and effect of Federal regulation of interstate commerce is so nearly parallel with the instant case in its essential facts that it would seem unnecessary to extend this opinion for other citations upon this proposition. In that case, the cattle company was the owner of herds of cattle at a point or points within the territory served by the defendant's railway. The plaintiff applied to the railway company in advance, requesting to be supplied with the necessary cars in specified numbers, at designated stations on designated dates. The railway company accepted the order, and plaintiff, in reliance thereon, drove its cattle to the defendant's station, and tendered the same for shipment. The railway company failed to furnish the cars, as agreed, and plaintiff was consequently forced to hold the cattle for several weeks, awaiting the arrival of cars wherein to ship them, and finally abandoned the shipment, and returned the herd to its ranch. Suit having been brought in the state court against the railway company for damages, it interposed a demurrer to the complaint, on the ground that it could not be required to furnish cars to go beyond its line in interstate shipment, and further, that, if plaintiff had any right of action, it arose under the Commerce Act, and the United States court had exclusive jurisdiction of the suit. The demurrer was overruled, and answer was filed, pleading a shortage of cars preventing the shipment. Plaintiff having recovered verdict and judgment, which was later affirmed by the Texas court, the case was taken to the United States Supreme Court on writ of error. That court, having overruled the

objection to the jurisdiction of the state court, proceeded to discuss the merits of the case. The defense set up by the railway company was substantially identical with that which is here relied upon. It was alleged that, while defendant's supply of cars was adequate for the needs of the country through which its road was operated, until about the time when plaintiff desired to ship his cattle, there existed, at that time, an unprecedented demand for transportation facilities of all kinds, including cars for live stock, and because thereof, there was a shortage of cars throughout the country, making it *impossible for defendant to have furnished said cars without neglecting other demands and discriminating against other persons* and firms, contrary to the provisions of the Federal law regulating interstate commerce. Dealing with this defense, the court, speaking by Mr. Justice Lamar, says:

"But whatever may be the rights and remedies of the parties and the jurisdiction of the commission in such cases, *it is certain that the defendants' answer does not meet the issue nor set out facts which would constitute a defense against the cause of action alleged in the plaintiffs' pleading.* For the answer indicates that the car shortage was known to the carriers when the plaintiffs demanded cars to be furnished in September and October. There is no allegation that in May, the carrier objected that the demand was unreasonable in the time that it was made or in the number of cars that were demanded. Nor was there any claim that the want of equipment was brought to the attention of the Cattle Company, or that it was notified that conditions were such as to make it impossible for the carriers to agree to furnish cars at the time and place designated. If such information had then been given to the shipper, or promptly upon subsequent discovery that the defendants would be unable to supply the cars, a different position would have arisen. But where, without fault on its part, a carrier is unable to perform a service due and demanded, it must promptly notify the shipper of its inability; otherwise the reception of goods without such notice will estop the carrier from setting up what would otherwise have been a sufficient excuse for refusing to accept the goods, or for delay in shipment after they had been received. * * * The liability of the carriers under these facts,

and in the absence of a showing of new facts establishing an excuse, *became fixed when the cattle were tendered for shipment and the carrier failed to furnish the facilities needed.* That liability cannot now be avoided by proof that the failure to furnish cars was occasioned by a shortage for which the carriers may not have been responsible, but as to which they failed to give timely notice to the shipper.''

The court concludes its discussion of the case with the declaration that ''there is no merit in the Federal question relied on, and the writ of error is dismissed.''

The precedent thus afforded commands our respect as controlling authority, and is clearly in accord with reason. A contract of the kind in question is not an agreement for special service, in addition to or in derogation of the regulations or restrictions of the Interstate Commerce Act. It does not contemplate any special favor or privilege to the shipper. There is no provision for rebate or false billing, or the slightest variation from the shipping contract authorized by the interstate commerce commission. The promise or agreement to furnish a car or cars at the rates and under the conditions which are open on equal terms to all shippers similarly circumstanced, is no discrimination. To deny such right would embarrass the carrier, no less than the shipper. As is well known, the average carrier very properly stimulates and increases its business by sending out its agents and representatives to canvass farmers, live-stock dealers, and feeders, to secure their business in marketing live stock. If these agents may not make any valid agreements with such patrons as to the place where and time when the shipments will be received, or for the supply of the necessary cars; or if the shipper who obtains the promise of the station agent for the supply of cars must drive his cattle and hogs and sheep to the station, taking upon himself the peril of a delay of a day or week or more, while awaiting the carrier's leisure or convenience to receive and transport the animals, that rule, once promulgated, would spell ruin to the shipper and serious loss to the carrier as well.

As has recently been said by the Michigan court, in *Thomas Canning Co. v. Southern Pac. Co.,* 219 Mich. 388 (189 N. W. 210, 213), ''the relations of the shipper and carrier are contractual,''

and the "fact that a contract is required by law to be in a certain form and to contain certain provisions does not change the relations of the parties." The applicable law or controlling regulation is read into and becomes a part of the contract. If a shipping contract contains any provision or stipulation of the kind or character forbidden, the agreement so made is, of course, void and of no effect; otherwise, the instrument is enforcible according to its express terms. Every common carrier of freight is expected to supply itself with adequate transportation facilities to meet the usual and normal demands for such service; and if, under any circumstances, failure to perform its obligations in this respect is sought to be excused because of an abnormally great and unforeseen demand for or shortage of cars, the carrier assumes the burden of proving such alleged fact, and the question so raised is for the jury. *Hastings v. New York, O. & W. R. Co.,* 6 N. Y. Supp. 836; *Joynes v. Pennsylvania R. Co.,* 235 Pa. 232; *St. Louis & S. W. R. Co. v. Leder,* 79 Ark. 59 (95 S. W. 170).

It is also to be noticed that, in a great majority of cases involving a claim for damages for failure to furnish cars, the failure charged has reference to the carrier's duty to supply cars on reasonable request or demand therefor, and not, as in the case at bar, where the failure charged is in the violation of an express agreement. The distinction has often been noticed; and it is held that, where an agreement is pleaded and proved, the carrier is held to a stricter performance than where the plaintiff relies upon a mere request or demand, to be performed in a reasonable time. See *Pacific F. & P. Co. v. Northern Pac. R. Co.,* 109 Wash. 481 (186 Pac. 852, 10 A. L. R. 337, and Note a, page 346); *Ayres v. Chicago & N. W. R. Co.,* 71 Wis. 372; *Pittsburgh, C. & St. L. R. Co. v. Hays,* 49 Ind. 207; *Oregon R. & N. Co. v. Dumas,* 181 Fed. 781 (104 C. C. A. 641); *Cronan v. St. Louis & S. F. R. Co.,* 149 Mo. App. 384 (130 S. W. 437); *Gulf, C. & S. F. R. Co. v. Hume Bros.,* 87 Tex. 211 (27 S. W. 110); *Toledo, W. & W. R. Co. v. Roberts,* 71 Ill. 540.

The appellant herein relies largely upon the authority of *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155 (56 L. Ed. 1033); *Hill v. Minneapolis & St. L. R. Co.,* 179 Iowa 406; *Sheldon v. Chicago, B. & Q. R. Co.,* 184 Iowa 865; and *Siemonsma v. Chi-*

*cago, M. & St. P. R. Co.*, 158 Iowa 483; but unfortunately for its contention, not one of the cited cases is in point. Their soundness may be unconditionally admitted, for the purposes of this case, without affecting the conclusions we have already announced. The *Kirby* case turns upon an admitted or proved discrimination in freight rates, contrary to the express provisions of the statute; and in each of the cited precedents, the contract or agreement was adjudged invalid because it provided for special service and extra facilities for shipping stock, not extended to or provided for other shippers. That the contract alleged by the plaintiff in this case is not open to such objection, and that a common carrier of freight may enter into a valid agreement to supply cars to meet the demands of a shipper for transportation on a specified date, at a designated station upon its line, and may be held to refund in damages for a failure to perform its agreement, finds further support in *Chicago, R. I. & P. R. Co. v. Beatty*, 42 Okla. 528 (141 Pac. 442); *Stewart & Son v. Chicago, R. I. & P. R. Co.*, 172 Iowa 313; *Ferrell & Co. v. Great N. R. Co.*, 119 Minn. 302 (138 N. W. 284); *Clark v. Ulster & D. R. Co.*, 189 N. Y. 93 (81 N. E. 766); 4 Elliott on Railroads (2d Ed.), Section 1473; 2 Hutchinson on Carriers (3d Ed.), Section 495; *Williams v. Armour Car Lines*, 7 Pen. (Del.) 275 (79 Atl. 919); *Wood v. Chicago, M. & St. P. R. Co.*, 68 Iowa 491; *Nichols v. Oregon S. L. R. Co.*, 24 Utah 83 (66 Pac. 768); *Baird Bros. v. Minneapolis & St. L. R. Co.*, 181 Iowa 1104; *Midland R. Co. v. George*, 36 Okla. 12 (127 Pac. 871).

It is suggested in argument that defendant was entitled to a reasonable time to produce the cars desired by plaintiff, and that the evidence does not show that it had such reasonable opportunity. This objection would be more pertinent if plaintiff were claiming damages for failure to furnish cars upon his request or demand. But he pleads, and his evidence tends to show, defendant's express agreement to supply the cars on the designated dates in the future. It must, therefore, be assumed that the time so stipulated was reasonably sufficient, or at least was satisfactory to the parties; and the fact, if it be a fact, that defendant was mistaken in its judgment of the time required, would constitute no defense to plaintiff's action. In this connection it is also to be noted that if, as claimed, there was a pre-

vailing shortage in the supply of cars on the defendant's railway system or in the immediate region of its station at Leighton, it fairly appears that such situation was as evident and well known to the defendant on the day when the alleged contract was made as it was on the date when it undertook to deliver the cars, and it must be presumed that its promise was made with due regard to its car supply. The trial court, by its instructions, charged the jury that, if there was an agreement by the defendant to furnish cars, as alleged by the plaintiff, the fact that there was a shortage in the supply of cars would not, in itself, excuse the defendant for not performing its agreement; but that, if to furnish them to him, as agreed, "would have been, under all the facts and circumstances, as disclosed by the evidence, an unfair discrimination in his favor, then you will find for the defendant." This statement of the law is one of which appellant cannot complain. It is very doubtful if there is anything in the evidence on which a finding of unfair or unlawful discrimination could be sustained. Much less is there any showing which would justify the court in holding, as a matter of law, that discrimination had been shown.

The record discloses no reversible error, and the judgment of the district court is—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.