## LEE A. HANKS, APPELLEE, v. MISSOURI PACIFIC RAILWAY COMPANY, APPELLANT.

FILED NOVEMBER 27, 1912. No. 17,058.

1. **Carriers:** ACTION: DEFENSE: INTERSTATE SHIPMENTS. In an action to recover from the defendant railway company the necessary cost of the labor, lumber and material used in constructing grain doors for box cars used in transporting grain from Cook, Nebraska, to Kansas City, Missouri, *held*, that the answer of the defendant company that the interstate commerce commission had made a rule to the effect that the carrier might not lawfully reimburse shippers for the expense incurred in attaching grain doors to box cars, unless expressly so provided in its tariff, and that there was no such provision in the tariff of the defendant company at the time the doors were so furnished (though afterwards one was adopted), and therefore that the defendant company was not liable, failed to state any defense.

2. ———: ———: ———: ———. That, as there is no allegation in the pleadings stating when the particular rule was adopted, it will not be presumed to have been adopted before the car doors were furnished, or to have been in force at that time.

APPEAL from the district court for Johnson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*B. P. Waggener* and *Edgar M. Morsman, Jr.,* for appellant.

*Hugh La Master, contra.*

HAMER, J.

On the 18th day of April, 1910, the plaintiff, who was a dealer in grain, lumber, coal, and live stock, at the village of Cook, Johnson county, Nebraska, sued the defendant in the district court for Johnson county, alleging his business, and that he was the sole owner thereof; that the defendant was a railway corporation, incorporated under the laws of the state of Missouri, licensed to do business in the state of Nebraska, and doing a general transportation business as a common carrier, with lines of railroad in the state of Nebraska and in other states, having a line of railroad running from Talmage, Nebraska, through Johnson county, Nebraska, and through the village of Cook, in said county, to Crete, Nebraska; that defendant maintains a depot at said village of Cook, and an office at said depot, and keeps a duly appointed agent in charge of said office for the management of its business at said village; that from the 26th of July, 1906, until the 17th of January, 1908, the plaintiff at the request of the defendant, made by the agent of the defendant, at Cook, Nebraska, sold, delivered and furnished to the defendant certain lumber and nails, and furnished certain labor to the defendant, all of the value of $271.03; that said articles were so furnished in repairing freight cars belonging to the defendant, and freight cars of other companies then being used by the defendant, all of which cars were loaded and shipped by the plaintiff to points on the lines of the defendant, and all of which articles were necessary to put said cars in proper repair and condition for the transportation of grain and stock, and were not made for the

purpose of violating any law, either state or federal, and in the construction of inside doors for grain cars owned and used by the defendant; that an itemized bill of said lumber, showing the dates when furnished, amounts, dimensions, kinds and prices, was attached to the petition as a part thereof; that the same were just and reasonable prices, and were the prices agreed upon, and that the lumber was of the aggregate value of $211.03; that nails were furnished as needed in making said repairs and said car doors from July 26, 1906, to January 17, 1908, and of the reasonable value of $10, and that labor was furnished as needed in making said repairs and car doors from July 26, 1906, to January 17, 1908, and of the reasonable value of $50; that by reason of the sale, delivery and furnishing of said lumber and nails, and the doing and furnishing of said labor, the defendant became indebted to the plaintiff in the sum of $271.03, for the payment of which the plaintiff has made demand of the defendant, and which the defendant has refused to pay. The prayer was for judgment against the defendant for $271.03, with interest at 7 per cent. from July 17, 1908, and costs.

The defendant answered, omitting the title of the case, the signature of counsel, and the verification, as follows: "Comes now the defendant, and, for its answer to the petition of the plaintiff, it admits that plaintiff furnished the material and labor in the amount and of the value stated in the petition, and defendant states: That any and all lumber which may have been furnished by the plaintiff, as alleged in his said petition, was furnished for the purpose of constructing grain doors, or making repairs upon certain grain cars, which were furnished by the defendant to the plaintiff for the transportation of grain in the regular course of interstate commerce; that each of the said cars, so furnished or repaired, moved from Cook, in the state of Nebraska, to Kansas City, in the state of Missouri, and beyond; that, by reason of such shipments of grain being of an interstate character, this court is without jurisdiction in the premises to hear or try this

case. The defendant alleges that, at the time the plaintiff claims to have furnished such lumber for grain doors, the defendant did not have, regularly published and filed with the interstate commerce commission, and posted as required by law, any tariff or any provision of any tariff, whereby the defendant promised, or agreed or was permitted, to reimburse the plaintiff for and on account of lumber so furnished. Plaintiff alleges that the interstate commerce commission, by rule 78 of bulletin 2 of the conference rulings of the commission, made a ruling as follows: '78. Grain Doors. A carrier may not lawfully reimburse shippers for the expense incurred in attaching grain doors to box cars unless expressly so provided in its tariff.' In construing and applying such ruling, the interstate commerce commission held that, if carriers proposed to pay shippers for grain doors furnished by such shippers, where the same were necessary and were actually furnished, carriers could pay the actual cost of such doors with stated maximum allowance per grain door and per car, provided same were covered by their tariffs; that, following the ruling of the interstate commerce commission, the defendant company thereafter regularly published and filed with the interstate commerce commission an amendment to its tariffs, which became effective November 16, 1908, as follows: 'When cars furnished for grain-loading, requiring interior doors, are not so equipped by the railroad company, and such doors are furnished by the shippers, the actual cost thereof (when not to exceed $1.20 per car) will be paid by this company.' That such amendment to defendant's tariffs was made subsequent to the time the plaintiff claims to have furnished the lumber for the grain doors in question, such lumber having been furnished from July 26, 1906, to and including January 17, 1908. The defendant states that payment by it to the plaintiff for the grain doors in question, without authorization therefor from the interstate commerce commission, would be a violation of the interstate commerce act, and would subject, not only the plaintiff, but also the defend-

ant, to a severe penalty. The defendant states that this honorable court is not only without jurisdiction in this matter, to enforce payment for grain doors prior to November 16, 1908, but its order so to do would be requiring the defendant company to violate the interstate commerce act; that the defendant has no desire in any way to take advantage of the plaintiff, and stands ready and willing at all times to reimburse and pay to the plaintiff any and all amounts which it may be authorized to pay by the interstate commerce commission, and the defendant alleges that, if the plaintiff has furnished lumber as claimed by him, the same would have been paid for in due course by the defendant, had such payment not been in violation of the law. Wherefore the defendant asks that it shall go hence without day, and recover its proper costs."

A general demurrer was filed by the plaintiff to the defendant's answer. Whereupon it was, on or about the 8th day of October, 1910, considered by the court that the said demurrer to the answer should be sustained. The defendant elected to stand upon its said answer, and refused to plead further, whereupon judgment was rendered for the plaintiff in the sum of $313.71, with interest from the date of the judgment at 7 per cent. per annum, and the costs.

It would seem that the question presented is whether the plaintiff can recover for repairs to freight cars and for grain doors furnished for freight cars, such cars having been furnished by the defendant for transporting grain shipped by the plaintiff in interstate traffic. If the plaintiff cannot recover, it must be because of provisions contained in the interstate commerce law, and amendments thereto. The appellant seems to particularly rely on sections 3, 6 of the act of 1887 (24 U. S. St. at Large, ch. 104, p. 379), and on the Elkins act, approved February 19, 1903 (32 U. S. St. at Large, pt. 1, ch. 708, p. 847). The act as amended may be found in Drinker, Interstate Commerce Act (Supplement), and allied acts, pp. 1-75. They may also be found in the act approved February 4,

1887 (24 U. S. St. at Large, ch. 104, p. 379), amended by act approved March 2, 1889 (25 U. S. St. at Large, ch. 382, p. 855); by act approved February 10, 1891 (26 U. S. St. at Large, ch. 128, p. 743); by act approved February 8, 1895 (28 U. S. St. at Large, ch. 61, p. 643); by act approved June 29, 1906 (34 U. S. St. at Large, pt. 1, ch. 3591, p. 584); by act approved April 13, 1908 (35 U. S. St. at Large, ch. 143, p. 60); by an act approved June 18, 1910 (36 U. S. St. at Large, ch. 309, p. 539). Section 3, among other things, provides: "That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Section 6, among other things, provides: "That every common carrier subject to the provisions of this act shall print and keep for public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its railroad, as defined by the first section of this act." Among other things, it is provided in said section that the schedules shall be printed in large type, and that copies shall be kept for the use of the public in every depot or station, also that no advance shall be made in the rates, fares, and charges except after 10 days' public notice, the notice to plainly state the changes proposed to be made in the schedule then in force. Section 3 remains as it was originally adopted, but section 6 has been amended. As amended, it is provided in section 6 that, when the rates have been established and published, it shall be unlawful for the common carrier to charge, demand, collect, or receive from any person a greater or less compensation than

is specified in such published schedule of rates, fares, and charges; that every common carrier shall file with the commission copies of its schedules of rates, fares, and charges, and shall notify the commission of all changes made, and shall also file with the commission copies of all contracts, agreements, or arrangements in relation to any traffic affected by the provisions of the act. There is also a penalty for failure to comply with the requirements of the act, such failure being punishable as a contempt.

The foregoing provisions are probably intended to pre-vent favoritism and the giving to one shipper an advantage over another. It, is plain that the plaintiff should recover for the labor and material furnished, unless the statute is in derogation of the common law and thereby forbids it. To pay a reasonable and just price for the labor and materials furnished does not of itself give the appellee undue or unlawful preference or advantage. The payment of a debt is not giving an undue preference or advantage. But it is claimed that the rule adopted by the interstate commerce commission wholly prevents the transaction itself, and that therefore there can be no re-covery. It is claimed that the transaction is of such a nature that the defendant company might pay one shipper one price for the labor and grain doors and pay another shipper another price, and that there is thereby created a chance to be dishonest and to violate the original inten-tion of the law which forbids discrimination.

Rule 78, adopted by the commission and set forth in the answer to which the demurrer is interposed, makes the reimbursement of shippers for expenses incurred in attach-ing grain doors to box cars unlawful, unless expressly pro-vided for in the tariff of the common carrier. It is alleged in the answer that the defendant filed with the commis-sion an amendment to its tariffs, which became effective November 16, 1908, and that this amendment provided that, when the cars required interior doors and the shipper furnished them, then the company would pay to the ship-per the actual cost of the doors, not exceeding $1.20 per

door, and that the amendment was made after the time that the plaintiff claims to have furnished the doors in question. The date fixed in the petition when the grain doors were furnished seems to be from July 26, 1906, to January 17, 1908. The amendment was made to the defendant's tariff November 16, 1908, being about ten months from the time the last item of the grain doors was furnished. It does not appear from the answer when rule 78 was adopted. Ten months elapsed after the last item of the grain doors was furnished before the tariff required was filed with the interstate commerce commission and became effective. In that ten months the rule may have been, and probably was, adopted. If so, it was after the grain doors were furnished. There would be nothing in the way of paying for the grain doors if they were furnished before rule 78 was adopted. For anything that appears in the answer, the rule had not yet been created, and was therefore not in existence when the doors were furnished.

It is the duty of the railway company to furnish the shipper a car that is fit to use. Perhaps the railway company fails to do so because of difficulties in the way. It may have been that the car doors have been stolen. Perhaps they have been broken up. At any rate they are missing, and the agent of the railway company is not in a condition perhaps to furnish the doors, and therefore the shipper may be compelled to rely upon his own ingenuity, labor and material. Therefore he builds the door and puts it in the car. The rule of the interstate commerce commission is based upon the idea that such an opportunity as this will be utilized by the railway company and the shipper in paying and securing unjust rebates. This reasoning is based upon the assumption that men in an ordinary commercial transaction are likely to have a secret agreement, and that unlawful rebates will be collected to the special advantage of the particular shipper who builds the car doors. We simply take the view that, before payment for the grain doors can be forbidden, the rule must have been

in force when the labor and materials for the grain doors were furnished.

The plaintiff brought the action to recover for labor and material furnished to the defendant. The whole defense was that the plaintiff was engaged in interstate shipment, and furnished labor and material in connection therewith, and that the defendant was forbidden to pay such charges by rule of the interstate commerce commission. A general demurrer to the answer was sustained and judgment rendered for the plaintiff. It does not appear from the answer that the rule was in force at the time the shipments were made and the labor and material furnished. Of course, the rule could not be retroactive, and the answer therefore states no defense.

The judgment is

AFFIRMED.

SEDGWICK, J., concurring only in the result.

The plaintiff brought the action to recover for labor and material furnished to the defendant. The whole defense was that the plaintiff was engaged in interstate shipment, and furnished labor and material in connection therewith, and that the defendant was forbidden to pay such charges by rule of the interstate commerce commission. A general demurrer to the answer was sustained and judgment rendered for the plaintiff. The defendant has appealed.

The rule relied upon is set out in the answer. It relates only to "grain doors to box cars." The petition counts upon lumber, labor and nails furnished in repairing the *cars* of the defendant. The answer says nothing about the labor and nails, and alleges that the *lumber* furnished by plaintiff "was furnished for the purpose of constructing grain doors or *making repairs upon certain grain cars*," without specifying that the doors were for box cars, or how much, if any, was for constructing grain doors. These allegations do not constitute a defense to plaintiff's claim. Moreover, it does not appear from the answer that the rule relied upon was in force at the time the shipments

were made and the labor and material furnished. Of course, the rule could not be retroactive, and for this reason, also, the answer fails to state a defense.

ROSE and FAWCETT, JJ., concur in this opinion.