CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, appellee, v. LINWOOD STONE PRODUCTS COMPANY, INC., appellant.

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, appellee, v. LINWOOD STONE PRODUCTS COMPANY, INC., appellant.

No. 51847.

(Reported in 138 N.W.2d 902)

DECEMBER 14, 1965.

REHEARING DENIED JUNE 13, 1966.

McCarthy & Hart, of Davenport, for appellant.

Gamble, Riepe, Martin & Webster and Duncan, Jones, Riley & Davis, all of Des Moines, and Cook, Blair, Balluff & Nagle, of Davenport, for appellees.

GARFIELD, C. J.—In these two consolidated law actions by the Rock Island and Milwaukee Railroads respectively, to recover demurrage on cars furnished Linwood Stone Products Company, Inc., the answer contained a counterclaim based on the railroad's alleged failure to furnish clean cars. On plaintiffs' applications for adjudication of law points under rule 105, Rules of Civil Procedure, the trial court ruled it was without jurisdiction to entertain the counterclaims and dismissed them. Defendant has appealed.

Each plaintiff filed a reply to the counterclaim against it although the Rock Island's reply is designated "Answer to

Counterclaim." One paragraph of this reply commences with the statement, "Further replying to defendant's counterclaim." Nothing is claimed for the designation given this pleading and we might properly disregard it. Since the actions are in all other respects identical for present purposes, it is necessary to consider only one of them.

So far as pertinent to this appeal the amended reply of each plaintiff alleges that the applicable tariffs filed with the Interstate Commerce Commission and Iowa Commerce Commission govern the rights, duties and obligations between the parties for the furnishing of cars, and since they do not provide for payment to the shipper for cleaning cars the court is without jurisdiction over the counterclaim and the Interstate Commerce Act grants exclusive jurisdiction thereover to the Interstate Commerce Commission (ICC). The reply quotes sections 2 and 6(1) and (7), Title 49, USCA, of this Act.

The adjudication appealed from states that since defendant did not controvert the allegations of the reply just referred to, they must be deemed admitted under rule 102, R. C. P. Further, that the posted tariffs govern all rights, duties and obligations between the parties and since they are silent as to payments for cleaning cars the court is without jurisdiction over the counterclaim and the Interstate Commerce Act grants exclusive jurisdiction thereover to the ICC.

I. As the railroads concede, the adjudication, on the court's own motion, that the allegations of the reply above summarized must be deemed admitted under rule 102 was error.

So far as pertinent here, allowable pleadings are petition, answer, counterclaim and reply. Rule 68, R. C. P. The answer may contain a counterclaim in a separate division as this answer did (rule 72). Rule 73 states, "There shall be a reply to a counterclaim, and to new matter in an answer, * * *." Rule 102, which forms the basis for this part of the adjudication, provides in pertinent part, "Every fact pleaded and not denied in a subsequent pleading as permitted by these rules shall be deemed admitted except * * * (2) allegations of a reply, * * * all of which shall be deemed denied by operation of law."

The part of the adjudication admittedly erroneous may be

due in part to the fact the Rock Island's reply is called "Answer to Counterclaim"; it contains new matter and, as stated, rule 73 requires a reply to new matter in an answer. But our rules make it clear the Rock Island's pleading was in fact a reply and should have been so designated. Rule 73 has always been accompanied by the statement, "Under rule 102 facts asserted in a reply are denied by operation of law."

The designation given a pleading is not of vital importance. Its character is to be determined largely by its allegations and legal effect, not solely from the name given it. In re Estate of Robinson, 231 Iowa 1099, 1102, 3 N.W.2d 158, 160, and citations; 71 C. J. S., Pleading, section 5. See also Pedersen v. Pedersen, 235 Iowa 708, 712, 17 N.W.2d 520, 522; 41 Am. Jur., Pleading, section 26, page 307.

II. We consider now the part of the adjudication applied for by plaintiffs that the tariffs posted with the interstate and state commissions govern *all* rights, duties and obligations between the parties and, since they are silent as to payments for cleaning cars, the court is without jurisdiction over the counterclaim and exclusive jurisdiction thereover is placed with the ICC by the Interstate Commerce Act, sections 2, 6(1) and (7), Title 49, USCA.

Plaintiffs open their argument with this:

"At first blush it might seem to this court plaintiffs are in a rather incongruous position in that they invoked the jurisdiction of the courts of Iowa in asking for demurrage charges, and then when a counterclaim is presented, plaintiffs state it is invalid because of a lack of jurisdiction in the Iowa courts. * * * However, plaintiffs feel the law is clear and supports their position, as will be shown in this brief.

"Under the Interstate Commerce Act, any departure by a railroad from their published tariffs in paying a shipper for services performed would constitute an unlawful rebate. The applicable federal statutes are Title 49, sections 2, 6(1) and 6(7), U. S. C. A." (which are quoted in full as they are in the amended reply).

We agree with the first of these quoted sentences, especially in view of our compulsory counterclaim rule, R. C. P. 29, which,

so far as here pertinent, provides: "A pleading must contain a counterclaim for every cause of action * * * held by the pleader against any opposing party * * *. A final judgment on the merits shall bar such a counterclaim, although not pleaded."

Before quoting the parts of the Interstate Commerce Act on which plaintiffs rely, we refer to the provisions of that Act and the Iowa statute which defendant contends plaintiffs violated by failing to furnish it clean cars. Section 1(11), Title 49, USCA, so far as applicable, states: "It shall be the duty of every carrier by railroad subject to this chapter to furnish safe and adequate car service and to establish, observe, and enforce just and reasonable rules * * * with respect to car service; * * *."

The pertinent part of section 479.3, Iowa Code, 1962, is: "Every railway corporation shall upon reasonable notice * * * furnish suitable cars to any and all persons who may apply therefor, for the transportation of any and all kinds of freight, * * *."

It would seem that unless forbidden by some provisions of the Interstate Commerce Act which plaintiffs plead, the Iowa courts have jurisdiction to determine whether the railroads' duty to furnish "adequate car service" for interstate shipments and "suitable cars" for intrastate shipments is complied with by furnishing cars it was necessary for defendant to clean, as it alleges.

The provisions of the Federal Act (Title 49, USCA) plaintiffs contend deprive the state courts of jurisdiction to entertain the counterclaim are:

"If any common carrier subject to the provisions of this chapter shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive * * * a greater or less compensation for any service rendered or to be rendered, in the transportation of passengers or property, subject to the provisions of this chapter, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be

deemed guilty of unjust discrimination, which is prohibited and declared to be unlawful" (section 2).

"Every common carrier subject to the provisions of this chapter shall file with the Commission * * * and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points * * *. The schedules * * * shall * * * state separately all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed, and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee. * * *" (section 6, subsection 1).

"No carrier * * * shall * * * charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs" (section 6, subsection 7).

We think plaintiffs claim more for these statutory provisions than the language used warrants and, as defendant asserts, it was error for the court to rule they deprive it of jurisdiction over the counterclaim or place exclusive jurisdiction in the ICC.

We do not understand it is contended the federal statutes just quoted apply to shipments wholly within this state. It appears a substantial number of the cars defendant alleges it was required to clean were furnished for and used in making such shipments. At least it is not clear all the cars allegedly cleaned were furnished for or used in interstate commerce. Thus even if the state courts were deprived of jurisdiction over the part of the counterclaim involving interstate shipments, as plaintiffs contend, the entire counterclaim should not have been dismissed

for want of jurisdiction. It is not suggested any Iowa statute deprives our courts of jurisdiction over the counterclaim or vests exclusive jurisdiction over any part thereof in the state commission.

Section 2 of the Interstate Commerce Act, supra, prohibits greater or less compensation for services *rendered by a carrier* in the transportation of property than it charges or receives from any other person for a like service to him.

Section 6(1) of the Act requires the posted tariffs to state all charges for transportation and other services furnished by the carrier and all other charges the ICC may require, all privileges or facilities allowed and any rules which affect the charges or value of the service rendered to the shipper.

Section 6(7) prohibits the carrier from receiving a greater or less compensation for transportation or service in connection therewith than the charges specified in the tariffs, prohibits refunds 'and extending to shippers privileges or facilities in the transportation of property not specified in the tariffs.

Plaintiffs do not plead or call attention to any rule of the ICC which deprives the state courts of jurisdiction over the counterclaim or prohibits payment of reasonable compensation for necessary cleaning of cars to render them adequate for the transportation of property unless the posted tariffs provide for such payment.

Subsection 7, last quoted above, prohibits extending "privileges" to shippers not specified in the tariffs. We are not prepared to hold this requires the tariffs to specify that cars to be furnished will be "adequate." As stated, furnishing "adequate car service" is a requirement of section 1(11) of the same Act. At least in the absence of some statement in the posted tariffs to the contrary, we think they must be held to imply that the service to be furnished by the railroad will meet this statutory requirement.

Baird Bros. v. Minneapolis & St. Louis R. Co., 181 Iowa 1104, 165 N.W. 412, supports the views above expressed. It was an action for damages for delay in furnishing cars for interstate shipment of cattle. The railroad pleaded a rule established by it, familiar to plaintiff, under which such cars would be fur-

nished only on certain days, that plaintiff sought an illegal discrimination, if plaintiff deemed the rule unfair the Interstate Commerce Act required him to apply to the ICC for a determination of such unfairness and, if its ruling were adverse, to appeal to the federal courts and, finally, that the state courts were without jurisdiction to determine the controversy. We held the court had jurisdiction of the case.

The claim of illegal discrimination was thus disposed of: "if, under the law and a like state of facts, defendant is compelled to receive shipments from plaintiff on other days, other customers or shippers would have the same right, and thus there could be no discrimination" (page 1112 of 181 Iowa).

On the claim of lack of jurisdiction the opinion states (pages 1116, 1117): "The authorities seem to hold that exclusive jurisdiction to pass upon the question of reasonable facilities was not conferred upon the Commerce Commission by this act; therefore we think it was not necessary to apply to the Commission before the injured party has a right to resort to the courts to recover damages such as are here claimed. * * * A shipper's demanding of the defendant reasonable shipping facilities does not abridge or interfere with, nor is it inconsistent with, the provisions of the Commerce Act. It seems to have been the purpose of the Interstate Commerce Act to save common-law and statutory remedies so far as possible, and furnish additional relief in certain cases, and that a specific remedy given by the act should be regarded as cumulative, where other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act, unless it be inconsistent with the act itself."

Finally, the Baird Bros. opinion holds (page 1122 of 181 Iowa): "Wherever there is no call for the rate-regulating discretion of the Commission to be exercised, or the question of discrimination between shippers is not involved, or there is no other provision which expressly prohibits state courts from exercising jurisdiction, the state courts have concurrent jurisdiction" (citations).

The Baird Bros. case is cited with approval in Vander Zyl v. Chicago, R. I. & P. Ry. Co., 195 Iowa 901, 909, 189 N.W. 953,

and Miller v. Davis, 213 Iowa 1091, 1095, 240 N.W. 743, 78 A. L. R. 1541, 1545. See also Carr v. Chicago, R. I. & P. R. Co., 173 Iowa 444, 449, 155 N.W. 840.

We think Pennsylvania R. Co. v. Puritan Coal Mining Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867, followed in Illinois Central R. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 35 S. Ct. 760, 59 L. Ed. 1306, also supports our holding. Both precedents are cited in support of the decision in Baird Bros. v. Minneapolis & St. Louis R. Co., supra, 181 Iowa 1104, 1122, 165 N.W. 412.

The Puritan Coal Co. case was an action in the state court for damages for failure to furnish plaintiff cars in which to ship coal to points both within and without the state in violation of a state statute and the railroad's common-law duty to furnish cars. It was held the state court had jurisdiction of the case without a preliminary finding of the ICC, since no claim was made that the railroad's rule to distribute cars on the basis of mine capacity in case of car shortage was unfair, unreasonable, discriminatory or preferential. See also Rock Milling & Elev. Co. v. Atchison, T. & S. F. R. Co., 98 Kan. 478, 158 P. 859.

Hanks v. Missouri Pacific R. Co., 92 Neb. 594, 138 N.W. 750, 752, 753, was an action to recover for labor and material in repairing grain doors for boxcars for interstate shipment of grain. The railroad pleaded the court was without jurisdiction to hear the case because rule 78 of the ICC prohibited reimbursing the shipper for expense in attaching grain doors to cars unless the tariffs provided therefor. The court held a demurrer to the answer was rightly sustained because it did not allege the rule was in effect when the doors were repaired. The railroad relied on substantially the same provisions of the Interstate Commerce Act relied on here. See annotation, 25 A. L. R. 191, 203, for summary of the decision.

These are brief excerpts from the Hanks opinion (pages 598, 601 of 92 Neb., pages 752, 753 of 138 N.W.) : "If the plaintiff cannot recover, it must be because of provisions contained in the Interstate Commerce Law * * *.

"There would be nothing in the way of paying for the grain doors if they were furnished before rule 78 was adopted."

As previously stated, plaintiffs have not pleaded or called attention to any rule of the ICC which has any application to the present appeal. Their reliance is on the provisions of the Interstate Commerce Act, quoted supra.

Plaintiffs strongly rely on Hawarden Sand & Gravel Co. v. Chicago & N.W. R. Co., 185 Iowa 1168, 171 N.W. 735, and told us in oral argument it is controlling. We think our holding does not conflict with the cited decision. It does not consider the question of jurisdiction of the state courts to entertain a counterclaim by a shipper to an action brought against it by a railroad. The case arose long before our compulsory counterclaim rule, R. C. P. 29, took effect in 1943. In fact the Hawarden opinion does not consider any question of jurisdiction over the claim of the shipper. It holds the case was wrongly decided on the merits, a question we do not consider here. Our review is confined to the trial court's adjudication it was without jurisdiction over the counterclaim because it said the Interstate Commerce Act vested exclusive jurisdiction in the ICC.

The Hawarden case is further to be distinguished from this on the ground the posted tariffs there expressly required the railroad to furnish only the lumber for coopering the cars in question and by clear implication relieved it from furnishing the labor for which the shipper sought recovery. Thus the reasonableness of the rule adopted by the carrier was involved—a question properly to be submitted to the administrative determination of the ICC in the first instance. Here, as pointed out, the railroads' tariffs are wholly silent on the railroad's duty to furnish adequate or suitable cars and no question of the reasonableness of a rule is presented.

Another precedent on which plaintiffs place much reliance is Loomis v. Lehigh Valley R. Co., 240 U. S. 43, 36 S. Ct. 228, 60 L. Ed. 517, also cited in the trial court's ruling. It was an action in a New York court to recover for material supplied by a shipper in constructing inside doors for cars to be used in transporting grain and vegetables in both intrastate and interstate commerce. The New York court of appeals held there could be recovery for the material supplied for the cars used in shipments within the state but that Congress had deprived the

1388

state courts of power to consider claims arising out of the interstate shipments. Loomis v. Lehigh Valley R. Co., 208 N. Y. 312, 101 N.E. 907. Upon writ of error sued out by the shipper the cited decision was affirmed by the supreme court.

The Loomis case, like our Hawarden case, supra, did not involve a counterclaim by the shipper in an action commenced by the railroad against it. Further, before the Loomises commenced their action the ICC adopted rule 78 providing, "A carrier may not lawfully reimburse shippers for the expense incurred in attaching grain doors to boxcars unless expressly so provided in its tariff." As we have pointed out, these plaintiffs do not plead or otherwise invoke rule 78 or any rule of the ICC which deprives our state courts of jurisdiction to entertain this counterclaim or prohibits payment of reasonable compensation for necessary cleaning of cars unless the tariffs provide for such payment. We think these distinctions between the two cases are important.

That defendant's claim here is asserted by way of counterclaim in an action brought by the railroad is an important consideration see Chicago & N.W. R. Co. v. Lindell, 281 U. S. 14, 50 S. Ct. 200, 74 L. Ed. 670. A compulsory counterclaim rule similar to our rule 29, R. C. P., supra, was also applicable there. The railroad relied on Title 49, U. S. C., section 6(7), as plaintiffs do here, to support its contention that the Commerce Act, as amended, prevented assertion of the counterclaim in its action to collect freight charges. The opinion holds allowance of the counterclaim did not constitute a payment of transportation charges or discrimination between shippers that the Act was intended to prevent.

The Lindell opinion states: "The Act ought not to be construed to put aside state laws and long-established practice in respect to pleading unless the intention of Congress so to do is plain. * * * There is no substantial ground upon which the Act may be given the construction for which the carrier contends" (page 18 of 281 U. S., page 201 of 50 S. Ct., page 673 of 74 L. Ed.). See also Indiana Harbor Belt R. Co. v. Alpirn, 139 Neb. 14, 296 N.W. 158, 161; Thompson v. Shields, 141 Neb. 508, 4 N.W.2d 1, 3; 13 Am. Jur.2d, Carriers, section 496.

Slocum v. Delaware, L. & W. R. Co., 339 U. S. 239, 70 S. Ct. 577, 94 L. Ed. 795, cited by plaintiffs, is clearly not in point. The opinion holds that as long as the National Railway Adjustment Board has not acted, neither a state nor a federal court has power to adjudicate a labor dispute between a railroad and labor union involving the interpretation of collective labor agreements as to their scope, since section 3 of the Railway Labor Act (45 U. S. C., section 153) confers exclusive jurisdiction over such a controversy upon the board. As we have tried to make clear, no comparable provision of the Interstate Commerce Act has been pleaded or called to our attention.

III. An annotation at pages 806 to 810 of 94 L. Ed., following the Slocum opinion, explains the doctrine of "primary administrative jurisdiction" which plaintiffs ask us to apply. The annotation states:

"Under the doctrine of primary jurisdiction, courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal, where the question demands the exercise of administrative discretion requiring the special knowledge, experience, and services of the administrative tribunal to determine technical and intricate matters of fact, and a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered."

An annotation in 1 L. Ed.2d 1596 to 1599, supplementing that in 94 L. Ed., contains this: "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. The doctrine applies particularly where litigation presents issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." See also 13 Am. Jur.2d, Carriers, section 58.

The primary jurisdiction doctrine above referred to seems not to have been recognized by us up to now. We are not persuaded it should be applied here. It is not apparent the reasons

for the existence of the doctrine are present or that the purposes it serves will be aided by its application here. The comparatively simple issues presented by the counterclaim may hardly be characterized as outside the conventional experience of judges or as requiring the exercise of administrative discretion. Incidentally, we note there has been no demand for a jury trial.

We express no opinion on the merits of the controversy.

Costs of printing the record and appellant's briefs to be taxed to appellees shall not exceed $1.50 per page.—Reversed and remanded.

All JUSTICES concur.